Linda **COCHRANE**

v.

**HOUSTON LIGHT AND POWER COMPANY.**

**Civil Action No. G–96–567.**

United States District Court, S.D. Texas, Galveston Division.

Feb. 24, 1998.

Scott Adam Sanes, Houston, TX, R. Keith Vaughan, Carabin and Shaw, San Antonio, TX, for Plaintiff.

Maria Wyckoff Boyce, Matthew P. Eastus, Maryanne Lyons, Baker & Botts, Houston, TX, for Defendant.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff, a Hispanic female, was hired in 1984 to work at Defendant's South Texas Nuclear Project. Initially hired as a chemical aide in the Chemistry Operations and Analysis Division, Plaintiff now is a senior chemical technician who continues to work for Defendant in that division. Since the beginning of her employment, Plaintiff has filed various grievances with management and has repeatedly met with management or the human resources department regarding work-related complaints. Plaintiff brought this case on March 1, 1996 alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, "general negligence," negligent hiring, negligent supervision, negligent retention, and intentional infliction of emotional distress. Plaintiff also alleges discrimination in violation of the Texas Labor Code, TEX. LABOR CODE ANN. § 21.001 *et seq.*, and the Equal Pay Act, 29 U.S.C. § 206(d). Now before the Court is Defendant's Motion for Summary Judgment. For the reasons that follow, Defendant's Motion is hereby **GRANTED**. Consequently, all of Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE.**

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *see*

*also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Casualty Co.,* 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

## II. MCDONNELL DOUGLAS/BURDINE FRAMEWORK

In this case, Plaintiff alleges she was discriminated against because of her sex and race. Plaintiff also alleges that Defendant retaliated against her after she complained of such mistreatment. Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides in relevant part:

> It shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1). Title VII also prohibits an employer from retaliating against any of its employees for asserting their rights under Title VII. *See id.* § 2000e–3(a). Plaintiff's Title VII claims require a showing of intentional discrimination. The Fifth Circuit applies the burden shifting analytical framework first established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to analyze claims under Title VII. *See, e.g., Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir. 1996) (applying the *McDonnell Douglas* analysis to Title VII unlawful retaliation cases); *Johnson v. Chapel Hill Indep. Sch. Dist.,* 853 F.2d 375, 381 (5th Cir.1988) (applying *McDonnell Douglas* to a differential treatment case brought pursuant to Title VII).[1]

Under the familiar *McDonnell Douglas/Burdine* framework, the Court employs a three-part test designed to determine Defendant's motivation in taking the challenged action. *See McDonnell Douglas,* 411 U.S. at 803–04, 93 S.Ct. at 1824–25; *Burdine,* 450 U.S. at 252–54, 101 S.Ct. at 1093–94. First, Plaintiff is required to establish a *prima facie* case, wherein she must establish the elements of the discrimination claim. If Plaintiff proves her *prima facie* case, a presumption of discrimination arises. *See Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 957 (5th Cir.1993). The burden of production then shifts to Defendant to rebut this presumption by articulating a legitimate, nondiscriminatory reason for the alleged discriminatory action. *See Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471, 1478 n. 19 (5th Cir.1992). Defendant meets this burden by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for Defendant. *See Guthrie v. Tifco Indus.,* 941 F.2d 374, 376 (5th Cir. 1991). Defendant need not persuade the trier of fact that there was no intentional discrimination; it need only produce evidence on that point. *See Hicks,* 509 U.S. at 507–08, 113 S.Ct. at 2747–48. Third, once Defendant satisfies this burden, the presumption of discrimination established by Plaintiff's *prima*

---

1. *McDonnell Douglas* was refined in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and was further clarified in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

*facie* case dissolves. *See Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. Plaintiff's burden of persuasion then arises, and she must produce evidence that Defendant's proffered reasons are mere pretexts, the real reason for the action having been based on an impermissible *animus*. *See id.* at 256, 101 S.Ct. at 1095; *Bodenheimer*, 5 F.3d at 959. Plaintiff may succeed at this juncture, either by persuading the Court that a discriminatory reason more likely motivated Defendant, or by showing that Defendant's proffered reason is unworthy of credence. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The ultimate burden of proof of intentional discrimination rests at all times with Plaintiff. *See Hicks*, 509 U.S. at 507, 113 S.Ct. at 2749.

Summary judgment is particularly appropriate when the Court is evaluating evidence at the "pretext" stage of the *McDonnell Douglas* analysis.

> "[I]t is relatively easy both for a plaintiff to establish a *prima facie* case and for a defendant to articulate a legitimate, non-discriminatory reason for his decision." ... In the context of summary judgment ..., the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext.

*Britt v. The Grocers Supply Co.*, 978 F.2d 1441, 1450 (5th Cir.1992) (quoting *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 811 (5th Cir.1991) (citations omitted)). Speculation and belief are insufficient to create a fact issue as to pretext. *See Britt*, 978 F.2d at 1451. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that she has been discriminated against. *See E.E.O.C v. Exxon Shipping Co.*, 745 F.2d 967, 976 (5th Cir.1984).

### III. ANALYSIS

#### A. Retaliation

Plaintiff alleges that after complaining to management of maltreatment, she was labeled a trouble maker, was disciplined, and had a grievance filed against her. Additionally, she argues that after filing a grievance, an unidentified person tampered with her "instrumentation," no one talked to her, she was counseled for sending e-mail messages,[2] and another Hispanic woman was scheduled on the day shift and she was not. In her Response to Defendant's Summary Judgment Motion, Plaintiff also asserts that she was denied the opportunity for promotions and was denied the chance for better jobs because she "spoke out." She does not, however, identify the jobs or promotions to which she refers.[3] To establish a *prima facie* case of retaliation under Title VII, Plaintiff must demonstrate that she engaged in protected activity; that an adverse employment action occurred; and that there is a causal connection between the protected activity and the adverse employment action. *See Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 n. 22 (5th Cir.1995).

Defendant argues that even if the Court accepts as true Plaintiff's allegations, Plaintiff cannot establish the required "adverse employment action" to support her retaliation claim. This Court agrees. In *Mattern v. Eastman Kodak Co.*, 104 F.3d 702 (5th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997), the Fifth Circuit discussed the definition of "adverse employment action" as that term is applied in retaliation cases under Title VII:

> The import of these cases ... is the long-held rule that Title VII's anti-retaliation provision refers to *ultimate employment decisions*, and not to an "interlocutory or mediate" decision which can lead to an ultimate decision. Obviously, this reading is grounded in the language of Title VII. As quoted earlier, the anti-retaliation provision states that employers shall not "discriminate" against employees for taking action protected by Title VII. In defining this term, we look, of course, to other Title

---

**2.** Plaintiff alleges that this counseling session was unwarranted disciplinary action. The Court notes that the sketchy evidence reveals that Plaintiff was reprimanded for what appears to be rank insubordination.

**3.** Such bald, blind, and subjective assertions are clearly insufficient to raise a fact issue to preclude summary judgment.

VII sections for guidance; in this case, the preceding section is helpful.

That section [2000e–2] states, in part, that it is unlawful to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment." This type of employer action [described in the anti-retaliation provision of Title VII] contrasts sharply with the more vague proscription, found in the next subpart [2000e–2], or "limitation" of employees which deprive or "would tend to deprive" the employee of "opportunities" or "adversely affect his status." It goes without saying that this second subpart reaches much farther than the first. It reaches acts which merely "would tend" to affect the employee: obviously, the way in which the employee may be affected in this subpart is much broader.

*Id.* at 708–09 (emphasis added) (citations omitted). The import of *Eastman Kodak* is that the anti-retaliation provision (42 U.S.C. § 2000e–3) of Title VII requires an ultimate employment decision before Plaintiff can establish a *prima facie* case. From an exhaustive review of the summary judgment evidence, the Court finds no such decision sufficient to support a *prima facie* retaliation claim. "Hostility from fellow employees . . . and resulting anxiety, without more, do not constitute ultimate employment decisions, and therefore are not the required adverse employment actions." *Id.* at 707; *see also Landgraf v. USI Film Prods.,* 968 F.2d 427, 431 (5th Cir.1992), *aff'd,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Plaintiff's retaliation claim is, therefore, **DISMISSED WITH PREJUDICE.**[4]

4. Assuming Plaintiff can establish an adverse employment action, she also fails to provide evidence that she was retaliated against *because* of her alleged participation in protected activity. Furthermore, in light of Defendant's legitimate nondiscriminatory reasons it offers for its challenged conduct, Plaintiff fails to establish that such reasons are pretextual.

5. Although Plaintiff uses the term "desperate impact," it appears that she is also contending that Defendant's practices violate Title VII on a disparate impact theory. To the extent it is alleged,

### B. *Intentional Discrimination Claims* [5]

Plaintiff also alleges that, because of her sex and race, she was denied promotions and was treated differently than white females and males in the workplace. Specifically, Plaintiff contends that in 1986 she was not transferred to a shift which would allow her to work with her husband, although white women received such transfers. Moreover, in 1987 through 1989, Plaintiff felt that her supervisor was treating her unfairly. She further contends that, in the late 1980s, she had to work harder than the men in her department. Furthermore, she alleges that in 1991 or 1992, her supervisor would not give her a half day off, although he gave a half day off to two male coworkers. Moreover, she claims that, while pregnant, she was not restricted from working in a radiation area, although white women were.[6] Plaintiff further contends that when she returned from maternity leave in 1991, she was not made an acting supervisor. She also asserts that she received performance ratings in 1993 and 1994 of "solid," instead of "outstanding." Additionally, she alleges instances in which unidentified persons told her to "get some coffee," told her that "women could not lift things," and told her that her job was to "take care of kids." Moreover, she complains of a general feeling that Defendant employees treated her "ugly" and talked down to her because of her sex. She also contends that, in 1993 or 1994, a white woman was not disciplined for doing work that the woman was not qualified to do, even though Plaintiff herself was not "given second chances like that." She further contends that because of her sex, she was not allowed to go to quality assurance training. Moreover, she alleges that a coworker called her "uppity." Finally, Plaintiff complains that

Plaintiff's failure to exhaust her administrative remedies by not asserting a disparate impact claim in her EEOC charge or any pleading before this Court clearly bars such a claim now. *See, e.g., National Ass'n of Gov't Employees v. City Public Service Bd. of San Antonio,* 40 F.3d 698, 711–12 (5th Cir.1994) (relying upon 42 U.S.C. § 2000e–5(f)(1)).

6. Plaintiff goes on to say that, upon complaint, her supervisor moved her from the radiation area.

she received two e-mail messages: one in which a male coworker complained about persons failing to clean-up after themselves and another in which a female employee implied that a supervisor was superior to a technician.

■ At the outset, the Court notes that Title VII requires a plaintiff to file a charge with the EEOC within 300 days of the alleged unlawful employment practice; March 19, 1995 in this case.[7] *See* 42 U.S.C. § 2000–5(e); *Mennor v. Fort Hood Nat'l Bank,* 829 F.2d 553, 556 (5th Cir.1987). The overwhelming majority of the allegations made by Plaintiff occurred well before March 19, 1995. Although Plaintiff argues otherwise, the "continuing violation" exception clearly does not apply in this case. For that exception to apply, Plaintiff must show that actionable conduct occurred both outside and inside the limitations period, but Plaintiff, as a reasonable employee, did not know or should not have known that the time-barred acts were discriminatory until within 300 days of filing an EEOC claim. *See Abrams v. Baylor College of Medicine,* 805 F.2d 528, 532–34 (5th Cir.1986). This Court understands that a reasonably prudent employee will not necessarily conclude that her employer is an illegal discriminator on the basis of one conversation and one at least arguably nondiscriminatory act. *See Glass v. Petro–Tex Chem. Corp.,* 757 F.2d 1554, 1562 (5th Cir. 1985). However, in this case, Plaintiff plainly admits that she believed she was being discriminated against prior to 1992. Thus, to the extent the alleged discriminatory actions occurred before March 19, 1995, they are time-barred.

■ To establish a *prima facie* case of sex or race discrimination based on a promotion denial, a plaintiff must demonstrate that (1) she applied for and was qualified for a job for which the employer was seeking applicants; (2) despite her qualifications, she was rejected; and (3) after her rejection, the position remained open and the employer continued to seek applicants from persons of Plaintiff's qualifications. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 (5th Cir.1996). Similarly, to establish a *prima facie* case under Title VII based on alleged differential treatment, a plaintiff must demonstrate that (1) she belongs to a protected group, *i.e.,* Hispanic women; (2) that she was qualified for her position; (3) that she suffered an adverse employment action; and (4) that she suffered the adverse action due to her membership in the protected class. *See Ward v. Bechtel Corp.,* 102 F.3d 199, 202 (5th Cir.1997); *cf. McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

As discussed above, adverse employment actions under § 2000e–2(a)(1) encompass a broader range of conduct than those under Title VII's retaliation provision. They include discharges, demotions, refusals to hire, refusals to promote, and reprimands. *See Pierce v. Texas Department of Criminal Justice, Institutional Division,* 37 F.3d 1146, 1149 (5th Cir.1994)(interpreting the antiretaliation provision of Title VII). An unwanted transfer may also qualify as an adverse employment action. *See Rutan v. Republican Party of Illinois,* 497 U.S. 62, 73–74, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)(holding that transfers based on political affiliation are an impermissible infringement on the First Amendment rights of public employees); *Ladapo v. City of Dallas,* No. 3:96–CV–1791–G, 1997 WL 600696, *7 (N.D.Tex. Sept.19, 1997)(not reported)(concluding that an employee's transfer constituted an adverse employment action).[8]

---

7. Plaintiff filed her claims with the EEOC on January 12, 1996.

8. The Seventh Circuit has defined with specificity "adverse employment action" as:
 [A] material adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.
 *Crady v. Liberty National Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993).

Moreover, § 2000e–2(a)(1) "reaches acts which merely 'would tend' to affect the employee; obviously, the way in which the employee may be affected in this subpart is much broader [than the anti-retaliation provision of Title VII.]" *Eastman Kodak,* 104 F.3d at 709; *see also Forsyth v. City of Dallas,* 91 F.3d 769, 773 (5th Cir.1996)(holding that the transfer of police officers from intelligence division to uniformed night patrol constituted a demotion), *cert. denied,*—— U.S. ——, 118 S.Ct. 64, 139 L.Ed.2d 26; *La Pierre,* 86 F.3d at 448 (holding that a demotion from service manager to mechanic created a fact issue as to whether an adverse employment action had occurred); *Rizzo v. Children's World Learning Ctrs., Inc.,* 84 F.3d 758, 765 (5th Cir.1996) (holding that an employer's decision to lower a disabled employee's hours, to require her to work a "split shift," and to change her position from bus driver to cook produced a fact issue as to whether there had been an adverse employment action); *Polanco v. City of Austin,* 78 F.3d 968, 980 (5th Cir.1996)(upholding jury finding that Hispanic police officer was disciplined more severely than his Caucasian counterpart); *Click v. Copeland,* 970 F.2d 106, 109 (5th Cir.1992) (holding that simply because sheriff deputies received no decrease in pay did not mean that their transfers were not demotions); *Fyfe v. Curlee,* 902 F.2d 401, 404 (5th Cir. 1990) (holding that a transfer to a less desirable but equally paying job constituted a demotion); *Levin v. Delta Air Lines, Inc.,* 730 F.2d 994, 996 (5th Cir.1984) (holding that placing pregnant flight attendants on ground duty was an adverse employment action). To the extent they are not time-barred, and understanding that Defendant is not liable for isolated incidents of which it had no knowledge, the Court finds that a reasonable jury *could* find that at least one of the multitude of complaints proffered by Plaintiff constitute a "limitation" of employment which deprived or "tended to deprive" Plaintiff of "opportunities," or at the very least "adversely affect [her] status." *See* 42 U.S.C. § 2000e–2(a)(1); *Armstrong v. City of Dallas,* 997 F.2d 62, 66 n. 12. (5th Cir.1993) ("We no longer ask whether literally little evidence, i.e., a scintilla or less, exists but, whether the nonmovant could, on the strength of the record evidence, carry the burden of persuasion with a reasonable jury.").

Assuming for the moment that Plaintiff has established a *prima facie* case,[9] the Court finds Defendant's proffered reasons for its actions legitimate and nondiscriminatory. Accordingly, *McDonnell Douglas'* burden-shifting structure becomes irrelevant to Plaintiff's claims, and the inference of unlawful discrimination created by Plaintiff's *prima facie* evidence disappears. *See Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095.

■ Having found that Defendant has provided legitimate, nondiscriminatory reasons for its conduct, the Court now turns to the issue of pretext. A plaintiff alleging employment discrimination need not come forward with direct evidence of discriminatory intent in order to avoid summary judgment. *See La Pierre,* 86 F.3d at 449; *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996) (en banc). Such direct evidence of an employer's discriminatory intent is rare; therefore, Title VII plaintiffs ordinarily. must prove their claims through circumstantial evidence. A plaintiff establishes this circumstantial evidence of intentional discrimination by demonstrating that Defendant's articulated nondiscriminatory rationale is pretextual. *See McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. Indeed, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination." *Hicks,* 509

---

9. Even if Plaintiff could sufficiently identify an adverse employment action, whether she establishes a *prima facie* case of racial or sex discrimination under Title VII is highly questionable, because she provides no summary judgment evidence that demonstrates that Defendant's conduct was due to racial or sexual animosity. In accordance with *McDonnell Douglas,* Plaintiff's failure in this regard prevents the Court from inferring discrimination. Bending over backwards, however, the Court will continue the analysis under the assumption that a *prima facie* case has been established.

U.S. at 511, 113 S.Ct. at 2749. In her deposition, Plaintiff clearly states that, other than her personal beliefs, she has no evidence to support her assertion that she was denied promotions due to her sex or race. Similarly, an exhaustive review of the summary judgment evidence reveals that the only evidence supporting *any* of Plaintiff's claims is her personal beliefs. "Speculation and belief are insufficient to create a fact issue as to pretext." *McKey v. Occidental Chem. Corp.*, 956 F.Supp. 1313, 1319 (S.D.Tex.1997) (Kent, J.). Moreover, conclusory statements, as offered here by Plaintiff, simply do not suffice. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) ("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden.... It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason.") (en banc); *see also Ray*, 63 F.3d at 434 (stating that "bald assertions of age discrimination are inadequate to permit a finding that proscribed discrimination motivated [Defendant's] actions against [Plaintiff]"). Although the burden rests here with Plaintiff, she fails to persuade the Court that a discriminatory reason more likely motivated Defendant or that Defendant's proffered reason is unworthy of credence. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. Consequently, Plaintiff's intentional discrimination claims are hereby **DISMISSED WITH PREJUDICE**.[10]

### C. Texas Labor Code Claims

Plaintiff also asserts violations of the Texas Labor Code based on the same work-related incidents described above. Because Texas courts look to federal precedent when analyzing such claims, *see, e.g., Cervantez v. Bexar County Civil Service Comm'n*, 99 F.3d 730, 733 n. 6 (5th Cir.1996); *Leatherwood v. Houston Post Co.*, 59 F.3d 533, 536 n. 5 (5th Cir.1995), Plaintiff's Texas Labor Code claims are similarly **DISMISSED WITH PREJUDICE**.

### D. Sexual Harassment

Plaintiff asserts a claim of hostile environment sexual harassment. Such claim requires proof of the following elements:

"(1) [t]he employee belongs to a protected group ...;

(2) [t]he employee was subject to unwelcome sexual harassment, i.e. sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or uninvited and is undesirable or offensive to the employee;

(3) [t]he harassment complained of was based upon sex ...;

(4) [t]he harassment complained of affected a 'term, condition or privilege of employment,' i.e., the sexual harassment must be sufficiently severe as to alter the conditions of employment and create an abusive working environment;

(5) [r]espondeat superior, i.e., that the employer knew or should have known of the harassment in question and failed to take prompt remedial action."

*Waltman v. International Paper Co.*, 875 F.2d 468, 477 (5th Cir.1989) (brackets and ellipses in original) (quoting *Jones v. Flagship Int'l*, 793 F.2d 714, 719–20 (5th Cir. 1986)).

Plaintiff's sexual harassment claim fails for two reasons. First, to survive summary judgment, Plaintiff must produce evidence showing, among other things, "that [Defendant] knew or should have known of the harassment in question and failed to take prompt remedial action." *Jones*, 793 F.2d at 719–20 (quotations omitted). Although Plaintiff argues that the environment at her job site was so pervasive it could be inferred that Defendant had knowledge, the Court disagrees. The evidence simply does not reflect such pervasiveness. Secondly, to maintain a claim of sexual harassment, "the challenged conduct must create an environment that a reasonable person would find

---

10. When a plaintiff alleges a claim for intentional infliction of emotional distress based on the same facts making up her Title VII claim, the former is

preempted. *See Jackson v. Widnall*, 99 F.3d 710, 716 (5th Cir.1996); *Rowe v. Sullivan*, 967 F.2d 186, 189 (5th Cir.1992).

hostile or abusive." *Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir.1996), *cert. denied,* ——— U.S. ———, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997). In addition to the litany of complaints discussed above, Plaintiff points to isolated comments by coworkers perceived by her to be sexist, finding a page out of a company handbook on her desk concerning Defendant's insubordination policy, and being reprimanded for arriving late. Whether an environment is hostile or abusive depends on the totality of the circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 371–72, 126 L.Ed.2d 295 (1993). "[C]asual or isolated manifestations of a discriminatory environment are not sufficient to demonstrate a hostile working environment under the law." *Gearhart v. Eye Care Ctrs. of America, Inc.,* 888 F.Supp. 814, 825 (S.D.Tex.1995); *see also DeAngelis,* 51 F.3d at 595–96; *Jones,* 793 F.2d at 719–20. The evidence proffered by Plaintiff simply does not rise to the level required to establish a hostile work environment. Therefore, Plaintiff's sexual harassment claim is **DISMISSED WITH PREJUDICE.**

### E. Compensation Discrimination Claim

 Plaintiff alleges compensation discrimination in violation of Title VII and the Equal Pay Act, 29 U.S.C. § 206(d)(1). To establish a violation of the Equal Pay Act, Plaintiff must show that Defendant "pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions." *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974)(internal quotations omitted). Likewise, to establish compensation discrimination under Title VII, Plaintiff must show: "(1) that she is a member of a protected class, and (2) that she is paid less than a nonmember for work requiring substantially the same responsibility." *Uviedo v. Steves Sash & Door Co.,* 738 F.2d 1425, 1431 (5th Cir.1984). In 1996, Plaintiff earned $55,830.81; in 1997, she made $63,153.32. Although neither party specifies the amounts, both apparently agree that certain male employees who perform the same tasks as Plaintiff earn more than her for the same amount of work. Defendant argues that this differential is due to a merit system.

Under both the Equal Pay Act and Title VII, once the defendant offers a merit system as the reason for the pay differential, the burden shifts to the plaintiff to show that the defendant's reason is pretextual. *See Grimes v. Texas Dep't of Mental Health & Mental Retardation,* 102 F.3d 137, 140 (5th Cir.1996) (Title VII); *Plemer v. Parsons–Gilbane,* 713 F.2d 1127, 1137 (5th Cir.1983) (Equal Pay Act).[11] During her deposition, Plaintiff clearly states that, besides her personal beliefs, she has no evidence whatsoever that Defendant's merit system was a pretext for racial or sexual animosity. *See Irby v. Bittick,* 44 F.3d 949, 954 (11th Cir.1995) (noting that a plaintiff must rebut nondiscriminatory reason by providing affirmative evidence or suffer summary judgment). Indeed, after a careful review of the summary judgment evidence, no such evidence exists. Where there is no evidence of pretext in the business reasons proffered by an employer defendant for a salary differential, a compensation discrimination claim fails. *See, e.g., id.* at 957; *Ebert v. Lamar Truck Plaza,* 715 F.Supp. 1496, 1501 (D.Colo.1987), *aff'd,* 878 F.2d 338 (10th Cir.1989). Consequently, Plaintiff's compensation discrimination claim is **DISMISSED WITH PREJUDICE.**

### F. Plaintiff's Negligence Claims and Intentional Infliction of Emotional Distress Claim

 In her Complaint, Plaintiff alleges "general negligence," negligent hiring, negligent supervision, and negligent retention. However, Plaintiff not only fails to establish

---

**11.** Under the Title VII *McDonnell Douglas* framework, a merit system serves as a legitimate, nondiscriminatory reason for Defendant's challenged action. Under the Equal Pay Act, a merit system is one of the four exceptions within the statute. *See* 29 U.S.C. § 206(d)(1).

the necessary elements of these claims, but she also fails to demonstrate why such claims are not barred by the Texas Workers' Compensation Act ("TWCA"), TEX. LAB. CODE ANN. § 408.001. "[TWCA] provides the exclusive remedy for injuries sustained by an employee in the course of his employment as a result of his employer's negligence." *Ward,* 102 F.3d at 203 ("The essence of Ward's case is that she was harmed, while trying to do her job, by another employee who resisted her authority, and that Bechtel failed to respond adequately. To the extent that her case is based on Bechtel's alleged negligence, recovery is foreclosed by the Texas Workers' Compensation Act."). Because she offers absolutely no evidence to the contrary, Plaintiff's negligence claims are, each and every one, **DISMISSED WITH PREJUDICE.**[12]

Plaintiff also asserts a claim for intentional infliction of emotional distress. To maintain such a claim, Plaintiff must show: (1) Defendant acted intentionally or recklessly; (2) Defendant's conduct was extreme and outrageous; and (3) Defendant's conduct caused Plaintiff severe emotional distress. *See Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993). For conduct to be "extreme and outrageous," it must surpass all bounds of decency, such that it is utterly intolerable in a civilized community. Liability simply does not attach for mere insults, indignities, threats, annoyances, or petty oppressions. *See Ward,* 102 F.3d at 203. Viewed in a light most favorable to Plaintiff, her allegations simply do not rise to that level necessary to support an intentional infliction of emotional distress claim. *See Johnson v. Merrell Dow Pharmaceuticals,* 965 F.2d 31, 33–34 (5th Cir.1992) (noting that denial of promotion and salary disputes are "mere employment disputes" insufficient to establish a claim for intentional infliction of emotional distress); *see also Ugalde v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239, 243 (5th Cir.1993) (declaring that allegations of illegal discrimination, in and of themselves, do not suffice to establish an intentional infliction of emotional distress claim). Consequently, Plaintiff's intentional infliction of emotional distress claim is **DISMISSED WITH PREJUDICE.**[13]

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED** and all of Plaintiff's claims asserted against Defendant in this action are hereby **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED**

### *FINAL JUDGMENT*

For the reasons set forth in the Court's Order Granting Summary Judgment in favor of Defendant issued this day, all of Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**THIS IS A FINAL JUDGMENT. ALL RELIEF NOT HEREIN GRANTED IS DENIED.**

---

12. Plaintiff's negligence claims are clearly more properly brought pursuant to Title VII.

13. Moreover, such claims are preempted. *See supra* note 10.