United States Court of Appeals,

Fifth Circuit.

No. 93-3802.

Freamont A. LaPIERRE, Plaintiff-Appellant,

Randy J. Ungar & Associates, Inc., Intervenor,

v.

BENSON NISSAN, INC., Defendant-Appellee.

June 27, 1996.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before KING, EMILIO M. GARZA and DeMOSS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiff Freamont LaPierre appeals the district court's order granting Defendant Benson Nissan's motion for summary judgment. We reverse and remand.

I

LaPierre, a black male, was a long-time employee of the Service Department of Benson Nissan, an automobile dealership. Starting as a mechanic, LaPierre was promoted to the position of Quality Control Shop Foreman and then to the newly-created Service Manager position. Both positions placed him second-in-command in the Service Department, supervised only by the Parts and Service Director. On two occasions while LaPierre was second-in-command in the Service Department, white males with less experience in the automobile dealership service industry were promoted to the Parts and Service Director position.

Nissan Motor Company routinely conducts audits of the warranty repair procedures of the Service Departments of its affiliated dealerships. During one such audit of Benson Nissan's Service Department, Nissan Motor Company discovered errors, primarily in bookkeeping and paperwork, that resulted in an $80,000 charge to Benson Nissan.[1] Soon thereafter, Benson Nissan reorganized

---

[1]The parties dispute whether LaPierre's responsibility as Service Manager extended to paperwork filled out in connection with warranty repairs.

its Service Department. The acting Parts and Service Director was forced to resign. The Service Manager position was eliminated, and LaPierre was demoted to mechanic. A white male who had previously worked under LaPierre's supervision was promoted to Director. LaPierre filed suit against Benson Nissan, alleging that Benson Nissan discriminated against him by failing to promote him and by demoting him on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) ("Title VII"), and in violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("§ 1981"). Benson Nissan filed a motion for summary judgment, which the district court granted. LaPierre filed a motion for reconsideration, accompanied by the newly-acquired deposition testimony of Robert Speights, an auditor at Nissan Motor Company. The district court considered Speights's deposition, but nonetheless denied LaPierre's motion for reconsideration. LaPierre filed a timely notice of appeal.

## II

LaPierre argues that the district court erred by granting Benson Nissan's motion for summary judgment. We review a district court's grant of summary judgment de novo. *Armstrong v. City of Dallas,* 997 F.2d 62, 65 (5th Cir.1993). Summary judgment is appropriate in cases in which there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In an employment discrimination case, we focus on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff. *Armstrong,* 997 F.2d at 65-66.

## A

The evidentiary framework for Title VII claims[2] was established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A Title

---

[2]Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). Section 1981 provides that all persons in the United States shall have the same contractual rights as white citizens. 42 U.S.C. § 1981(a). Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII. *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377-78, 105 L.Ed.2d 132 (1989). Therefore, the following analysis applies to both LaPierre's Title VII and § 1981 claims.

VII plaintiff bears the initial burden to prove a prima facie case of discrimination by a preponderance of the evidence. *Id.* at 802, 93 S.Ct. at 1824. A plaintiff may prove a prima facie case of discrimination by showing (1) that he is a member of a protected class, (2) that he sought and was qualified for an available employment position, (3) that he was rejected for that position, and (4) that the employer continued to seek applicants with the plaintiff's qualifications. *Id.*[3] Once established, the plaintiff's prima facie case raises an inference of intentional discrimination. *Id.* The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Id.* If the defendant comes forward with a reason which, if believed, would support a finding that the challenged action was nondiscriminatory, the inference raised by the plaintiff's prima facie case drops from the case. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255 & n. 10, 101 S.Ct. 1089, 1094-95 & n. 10, 67 L.Ed.2d 207 (1981). The focus then shifts to the ultimate question of whether the defendant intentionally discriminated against the plaintiff. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510-11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

LaPierre alleges two separate grounds for his claims of racial discrimination. First, he alleges that Benson Nissan unlawfully discriminated against him by failing to promote him to the position of Parts and Service Director.[4] Second, he alleges that Benson Nissan unlawfully discriminated against him by demoting him to the position of mechanic. We must first consider whether LaPierre has established a prima facie case of unlawful discrimination with regard to each of these grounds. LaPierre is a black male. The summary judgment evidence shows that LaPierre approached the management of Benson Nissan on multiple occasions to request that he be considered for the position

---

[3]The elements of a plaintiff's prima facie case necessarily vary according to the facts of the case and the nature of the claim. *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13; *see St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (finding the third element of Title VII plaintiff's prima facie case for wrongful demotion satisfied by proof that "he was demoted from that position and ultimately discharged").

[4]Although LaPierre was passed over for the Director of Parts and Service position on two occasions prior to the Nissan Motor Company audit, the failure-to-promote claim asserted in LaPierre's complaint challenges only Benson Nissan's decision not to promote him when the acting Director of Parts and Service was forced to resign following the Nissan Motor Company audit.

of Parts and Service Director. LaPierre had twenty years' experience in the automobile dealership service industry and had held every position in Benson Nissan's Service Department except that of Director. Current members of Benson Nissan's management testified that LaPierre was qualified for the Director position and that he was as qualified as the persons selected for that position. Lastly, Tommy Discon, a white male, was chosen for the position of Parts and Service Director. Therefore, for purposes of summary judgment, LaPierre has established a prima facie case with regard to his claim that Benson Nissan unlawfully discriminated against him by failing to promote him.

Turning to the elements of LaPierre's prima facie case for wrongful demotion, the summary judgment evidence shows that LaPierre was originally employed by Benson Nissan as a mechanic and was promoted first to the position of Quality Control Shop Foreman and then to Service Manager. Prior to his demotion, LaPierre had never been the subject of disciplinary action. Following reorganization of the Service Department, LaPierre was demoted to mechanic, resulting in a substantial loss of responsibility and compensation. When the position of Service Manager was eliminated, LaPierre's responsibilities as second-in-command were assumed by the Quality Control Shop Foreman, Mark Olivier, a white male. Therefore, for purposes of summary judgment, LaPierre has established a prima facie case with regard to his claim that Benson Nissan unlawfully discriminated against him by demoting him to the position of mechanic.

The burden of production thus shifts to Benson Nissan to articulate a legitimate, nondiscriminatory reason for failing to promote LaPierre to Director of Sales and Service and for demoting LaPierre to mechanic. Benson Nissan offers the same explanation with regard to both challenged employment decisions. The Nissan Motor Company audit of Benson Nissan's warranty repair procedures revealed significant errors. Benson Nissan claims that, following the audit, Nissan Motor Company recommended, and Benson Nissan management agreed, that the Service Department be reorganized. Benson Nissan further claims that Nissan Motor Company specifically recommended that LaPierre and others be removed from managerial positions. We find that this explanation, if believed, would support a finding that the decision not to promote LaPierre and the decision to demote LaPierre were nondiscriminatory. Accordingly, *McDonnell Douglas's* burden-shifting

structure becomes irrelevant to LaPierre's claims, and the inference of unlawful discrimination created by LaPierre's prima facie evidence disappears.

B

Our focus now shifts to the ultimate question of whether Benson Nissan intentionally discriminated against LaPierre on the basis of race. A plaintiff alleging employment discrimination need not come forward with direct evidence of discriminatory intent in order to avoid judgment as a matter of law. *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 993 (5th Cir.1996) (en banc).[5] Direct evidence of an employer's discriminatory intent is rare; therefore, Title VII plaintiffs must ordinarily prove their claims through circumstantial evidence. A plaintiff may establish circumstantial evidence of intentional discrimination by demonstrating that a defendant's articulated nondiscriminatory rationale was pretextual. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. In fact, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *St. Mary's,* 509 U.S. at 511, 113 S.Ct. at 2749.

In *Rhodes v. Guiberson Oil Tools,* we considered en banc whether a plaintiff necessarily presents a jury issue on the ultimate question of intentional discrimination by proving the elements of a prima facie case and presenting a fact issue as to the truth of the defendant's proffered rationale. We held that "the answer lies in our traditional sufficiency-of-the-evidence analysis." *Rhodes,* 75 F.3d at 993. Our traditional sufficiency-of-the-evidence standard provides, "There must be a conflict in substantial evidence to create a jury question." *Boeing Co. v. Shipman,* 411 F.2d 365, 375 (5th Cir.1969) (en banc). Evidence is "substantial" if it is "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* at 374.

In *Rhodes,* we first translated *Boeing's* language into the employment discrimination context,

---

[5]*Rhodes v. Guiberson Oil Tools* involved a claim of age discrimination brought under the Age Discrimination in Employment Act ("ADEA"). We apply *McDonnell Douglas*'s Title VII framework to employment discrimination cases brought under the ADEA. *Brodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 n. 4 (5th Cir.1993).

stating that circumstantial evidence will create a jury question if it is "such as to allow a rational factfinder to make a reasonable inference that age was a determinative reason for the employment decision." *Rhodes,* 75 F.3d at 994. Accordingly, we stated the following standard: "[A] jury issue will be presented and a plaintiff can avoid summary judgment ... if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that age was a determinative factor in the actions of which plaintiff complains." *Id.*

The two-pronged standard we announced in *Rhodes* makes clear that a plaintiff must present evidence sufficient to create a reasonable inference of discriminatory intent in order to avoid summary judgment. However, we failed in *Rhodes* to specify exactly what evidence was necessary to create such an inference. *See id.* ("The evidence necessary to support an inference of discrimination will vary from case to case."). In some cases, "substantial" evidence that the employer's proffered reason is false, without additional evidence, will support a reasonable inference of discriminatory intent:

> A jury may be able to infer discriminatory intent in an appropriate case from substantial evidence that the employer's proffered reasons are false. The evidence may, for example, strongly indicate that the employer has introduced fabricated justifications for an employee's discharge, and not otherwise suggest a credible nondiscriminatory explanation.

*Rhodes,* 75 F.3d at 994. In other cases, evidence presented to rebut an employer's proffered reason will not, without additional evidence, support a reasonable inference of discriminatory intent. In *Rhodes,* we gave examples of such cases, in which we labeled the plaintiff's evidence "not substantial":

> In some cases, for instance, the fact that one of the nondiscriminatory reasons in the record has proved highly questionable may not be sufficient to cast doubt on the remaining reasons. Likewise, an employer's explanation for its proffer of a pretextual reason may preclude a finding of discrimination.[6]

*Rhodes,* 75 F.3d at 994.

To apply the two-pronged standard we announced in *Rhodes,* we first must consider whether LaPierre's evidence creates a fact issue as to each of Benson Nissan's stated reasons. As discussed

---

[6]An employer might explain why it initially proffered a pretextual reason by introducing uncontroverted proof that, for example, disclosure of the real reason for the challenged decision would have revealed a business trade secret. *Rhodes,* 75 F.3d at 994.

above, Benson Nissan's proffered reason for not promoting LaPierre and for demoting LaPierre was that Nissan Motor Company recommended that the Service Department be reorganized and specifically recommended that LaPierre and others be removed from managerial positions. In response, LaPierre offers the deposition testimony of Robert Speights, the most senior official at Nissan Motor Company involved in the Benson Nissan audit. Speights testified that Nissan Motor Company made no recommendation that the Service Department be reorganized and made no recommendation that LaPierre and others be removed from managerial positions. In fact, Speights testified that Nissan Motor Company policy required auditors not to discuss personnel issues with the management of a dealership. Speights's testimony clearly presents a fact issue as to whether Benson Nissan's stated reason was what actually motivated the decisions that LaPierre challenges.[7]

We must next consider whether the summary judgment evidence, taken as a whole, creates

---

[7]For the first time on appeal, Benson Nissan argues that the Nissan Motor Company recommendations composed only one of several reasons for the challenged decisions, and therefore that Speights's testimony does not create a fact issue as to each of Benson Nissan's proffered reasons. In its "Statement of Material Facts as to Which There Is No Genuine Issue to be Tried," submitted to the district court in support of its motion for summary judgment, Benson Nissan proffered the following rationale:

As a result of heavy financial loss suffered and the operational problems revealed by the audit, Nissan recommended, and Benson Nissan management agreed, that the Service Department should be reorganized. Further, Nissan specifically recommended that LaPierre and others be removed from managerial positions in the Service Department.

Benson Nissan now attempts to parse this language into two independent reasons for reorganizing the Service Department: (1) Nissan Motor Company recommended that the Service Department be reorganized after the audit, and (2) Benson Nissan management agreed that the Service Department be reorganized after the audit. Benson Nissan argues that a fact issue exists only as to the Nissan Motor Company recommendations.

An employer's proffered reasons do not exist apart from the record: "The reasons the defendant sets forth are set forth through the introduction of admissible evidence." *St. Mary's,* 509 U.S. at 523, 113 S.Ct. at 2755 (citation and internal quotation marks omitted). Benson Nissan points to nothing in the summary judgment record that even suggests that the decision of Benson Nissan management to reorganize the Service Department was made independently of the alleged recommendations of Nissan Motor Company. Assertions in Benson Nissan's brief that the decision to reorganize was made because it "made good business sense" are supported only by testimony referring explicitly to the alleged Nissan Motor Company recommendations. Speights's deposition testimony that no such recommendations were made thus creates a fact issue as to Benson Nissan's *only* articulated explanation for its decision to reorganize the Service Department.

a reasonable inference that race was a determinative factor in Benson Nissan's decisions not to promote LaPierre and to demote LaPierre. First, LaPierre presents Speights's deposition testimony that Nissan Motor Company never issued the recommendations relied on by Benson Nissan. Speights's testimony strongly indicates that Benson Nissan introduced fabricated justifications for the decisions that LaPierre challenges. In addition, Speights's testimony does not otherwise suggest a credible nondiscriminatory explanation for these decisions. Therefore, we find that Speights's testimony is the kind of "substantial" evidence of pretext, as we discussed that term in *Rhodes,* that may, without additional evidence, support a reasonable inference of discriminatory intent. Further, Speights's testimony is not the kind of evidence of pretext that we described in *Rhodes* as "not substantial." Speights's testimony directly challenges the *only* reason articulated by Benson Nissan for the decisions that LaPierre challenges. Further, Benson Nissan has not provided *any* explanation for why a pretextual reason was pro ffered, much less an explanation that precludes a finding of discrimination.

Today we need not decide whether Speights's deposition, when coupled with the elements of LaPierre's prima facie case, is sufficient, *without other evidence,* to create a reasonable inference of discriminatory intent. LaPierre presents other evidence in support of his claims. Thomas Discon, the current Director of Parts and Service at Benson Nissan, testifies that his review of the audit report revealed no problems with LaPierre's performance. The summary judgment record also includes evidence concerning the two previous instances in which white males with less experience in the automobile dealership service industry than LaPierre were named Parts and Service Director. Considering the summary judgment record as a whole, we find that the evidence in LaPierre's case, while certainly not overwhelming, is sufficient to create a reasonable inference that race was a determinative factor in the decisions of Benson Nissan not to promote LaPierre to Director of Parts and Service and to demote LaPierre to mechanic. Accordingly, we find that a jury issue exists as to whether Benson Nissan intentionally discriminated against LaPierre on the basis of race, and we hold

that the district court erred in granting Benson Nissan's motion for summary judgment.[8]

### III

We REVERSE the district court's order granting summary judgment in favor of Benson Nissan on LaPierre's claims alleging employment discrimination, and we REMAND to the district court for further proceedings consistent with this opinion.

---

[8]We hold only that LaPierre has presented a jury issue on the question of unlawful discrimination. We express no opinion as to the merits of his claims.