IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-20771
Summary Calendar
_____

ROSE J. WOODS,

                                        Plaintiff-Appellant,

v.

THE TEXAS DEPARTMENT OF HUMAN SERVICES;
SHIRLEY BARKER,

                                        Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Texas
(H-96-CV-2707)
_____
March 31, 1998
Before KING, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:*

     Plaintiff-appellant Rose Woods appeals the district court's

grant of summary judgment in favor of defendants-appellees Texas

Department of Human Services and Shirley Barker on her employment

discrimination claims under Title VII of the Civil Rights Act of

1964 and the Age Discrimination in Employment Act.  We affirm the

_____

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

judgment of the district court.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

At the time of her discharge on December 5, 1994, Rose Woods, a black female age fifty-six years, had worked for the Texas Department of Human Services (DHS) for twenty-two years. For the twelve years immediately preceding her discharge, Woods worked as a Medical Eligibility Specialist (ME) II in the La Grange office of DHS Medical Eligibility Unit 25.  As part of her responsibilities as an ME II, Woods screened clients for Medicaid eligibility, including making determinations as to Medicaid payments for nursing home care and Medicare premiums. Additionally, she provided information and referral services to clients, providers' staff members, and the general public.

In December 1992, DHS appointed Shirley Barker as supervisor of Unit 25.  Barker supervised Unit 25 from her office in Temple, Texas.  During her supervision of Woods, pursuant to the case reading policy in effect for the DHS region that included Unit 25, Barker became aware of numerous errors Woods made in her eligibility determinations.  Each month the state office would send Barker a list of case names by worker that were to be reviewed by the supervisory staff.  A committee consisting of Barker and two ME III workers reviewed each case on the list.

2

After the committee reviewed the cases, the affected employee would have the opportunity to re-examine the cases and rebut any disputed errors. Barker routinely met with Woods to discuss her errors and to refer her to the appropriate sections in the Medicaid Eligibility Handbook.

Woods's 1993 performance evaluation contains a "does not meet requirements" rating, her first such rating during her twenty-two years with DHS. Barker placed Woods on corrective action from February 1, 1994 through April 30, 1994 and on probationary status from September 1, 1994 through November 1, 1994. On December 5, 1994, Woods was discharged.

Woods filed her Original Complaint against the DHS and Barker (collectively DHS) alleging race and age-based discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-2(a), and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621-634. Woods also alleged that DHS illegally deprived her of rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983, by terminating her and by denying her employment in the Community Service Worker position for which she applied.[1]

DHS filed their Motion for Summary Judgment on July 14,

---

[1] Because Woods failed to include the failure-to-hire claim in the charge filed with the EEOC, the district court determined that this claim was barred. *See Fine v. GAF Chem. Corp.*, 995 F.2d 576, 577-78 (5th Cir. 1993). Woods does not challenge this determination. Consequently, this claim is not before this court on appeal.

1997.  The judge assigned to the Woods case died on July 23, 1997.  Woods asserts that the court manager informed her that "all pending motions were vacated," that she would be advised when the case was transferred to another court, and that she should timely file her joint pre-trial motion due August 25, 1997.  Based on this conversation with the court manager, Woods did not file a response to the Motion for Summary Judgment.  The district court granted DHS's Motion for Summary Judgment and entered judgment in favor of DHS on August 8, 1997.

On August 10, 1997, Woods filed a rule 60(b) Motion for Relief from Judgment, FED. R. CIV. P. 60(b)(1); a Motion to Enlarge Time to Respond to Defendant's Motion for Summary Judgment, FED R. CIV. P. 6(b); and a Response in Opposition to Defendant's Motion for Summary Judgment.  After reviewing Woods's motions and late-filed response, the district court concluded that even if Woods's response had been timely, her arguments and exhibits would have been insufficient to defeat DHS's Motion for Summary Judgment.  Accordingly, on September 9, 1997, the district court denied Woods's Motion for Relief from Judgment.

## II.  DISCUSSION

Woods contends that the district court erred in granting DHS's Motion for Summary Judgment.  We review the granting of summary judgment de novo, applying the same criteria employed by the district court in the first instance.  *Texas Med. Ass'n v.*

4

*Aetna Life Ins. Co.*, 80 F.3d 153, 156 (5th Cir. 1996).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  In applying this standard, we first consult the applicable substantive law to ascertain the material factual issues.  *King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992).  We then review the evidence pertaining to those issues, viewing the facts and inferences in the light most favorable to the non-moving party.  *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994).

The moving party bears the initial burden of "informing the district court of the basis for its motion and identifying" the portions of the record that "it believes demonstrate the absence of a genuine issue of material fact."  *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  If the moving party meets its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585-87 (1986).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established a three step process for analyzing employment discrimination under Title VII.  *Id.* at 803-04.  This

5

court applies the same requirements and evidentiary analysis to cases brought under the ADEA. *Meinecke v. H & R Block*, 66 F.3d 77, 83 (5th Cir. 1995); *Bodenheimer v. PPG Indus.,* 5 F.3d 955, 957 n.4 (5th Cir. 1993). To establish a prima facie case, the "plaintiff must prove that (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she was discharged; and (4) after being discharged, her employer replaced her with a person who is not a member of the protected class." *Id.* In age discrimination cases, the plaintiff may alternatively show either that she was replaced by someone younger or that she was discharged because of her age. *Id.*

If the plaintiff has successfully established her prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. *Marcantel v. Louisiana Dep't. of Transp. & Dev.*, 37 F.3d 197, 199 (5th Cir. 1994). If the defendant produces a legitimate, nondiscriminatory reason for the challenged action, it has successfully removed the inference of unlawful discrimination raised by the plaintiff's prima facie case. *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996); *see also Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1980). The plaintiff must then persuade the trier-of-fact that the defendant's articulated reason is merely a pretext for an intentional act of

6

discrimination against the employee.  *LaPierre*, 86 F.3d at 448 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993)).

Woods asserts that her failure to timely file a response to DHS's Motion for Summary Judgment was due to "excusable neglect," such that the court should relieve her from the judgment pursuant to Rule 60(b).  Woods does not explicitly argue that the district court erred in denying her Rule 60(b) Motion for Relief from Judgment.  Rather, in articulating the standard employed to review the denial of Rule 60(b) motions, she argues that the district court granted summary judgment without considering the merits of her belated response.  Assuming arguendo that Woods could successfully demonstrate excusable neglect in failing to timely respond to the Motion for Summary Judgment, her claims of race and age-based discrimination nonetheless fail as a matter of law.  The summary judgment evidence included in Woods's late-filed response fails to establish the existence of a genuine issue of material fact.

We note as an initial matter that, in arguing that a genuine issue of material fact exists as to whether DHS's proffered reason for her discharge is pretextual, Woods relies heavily on *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503 (5th Cir. 1988).  Her reliance is misplaced.  The test she cites for establishing intentional discrimination derives from language in

*Bienkowski*, *id*. at 1506 (citing *Burdine*, 450 U.S. at 256), that the Supreme Court has declared to be dictum. *See St. Mary's Honor Ctr.*, 509 U.S. at 517-18.

This court analyzes the pretext prong of the *McDonnell Douglas* test by the traditional sufficiency-of-the-evidence standard. *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (en banc). "There must be a conflict in substantial evidence to create a jury question." *Id*. (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir. 1969) (en banc)). Evidence must exist that the employee's protected trait prompted the employment decision and "had a determinative influence on the outcome." *Id.* (quoting *Hazen Paper co. v. Biggins*, 507 U.S. 604, 610 (1993)).

In her late-filed response, Woods submitted the Unit 25 staff directory, Barker's travel records, interoffice memoranda, discovery requests and responses, a list entitled "CCAD staff," letters from the nursing homes she serviced, her Employment and Development Plan and Evaluation, and her Original Complaint. Much of Woods's evidence substantiates DHS's proffered reason for her discharge rather than refuting it. In her unsworn memoranda responding to her supervisor's conferences, Woods admits errors and delinquency in her work. Nothing in her exhibits contradicts her deposition statements in which she admits errors in her casework. Her annual evaluation demonstrates that she failed to

8

satisfy the statistical performance criteria DHS employs to measure whether ME employees "meet" or "exceed requirements" of the job. Woods maintains that the errors resulted from a personal situation requiring her attention during the latter part of 1993 and a turnover in staff in the La Grange office. However, she has admitted that, during the pertinent time frame, she never informed Barker of problems in completing applications nor did she request assistance with her casework. Even if DHS had ignored requests for assistance, this fact would not entitle Woods to relief under Title VII or the ADEA. Neither of these statutes "protects against unfair business practices, only against decisions motivated by unlawful animus." *Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997).

Woods argues that, after her discharge, "only white, younger similarly situated workers remained in her unit." However, the evidence she cites as establishing this fact is a list entitled "CCAD Staff" containing the names of seven white female employees ranging in age from thirty-three to forty-nine, all but one in her forties. Woods does not indicate what position any of these employees held. The Unit 25 directory which she submitted with her late-file response contained the names of ten ME specialists and trainees and five secretarial and clerk-typist employees. This list does not categorize employees by race or age. Only one name appears on both lists, that of Lynette Wiederhold, who is

identified as a clerk-typist on the Unit 25 directory. Woods submits no other evidence to indicate that the employees named on the list are similarly situated.

Moreover, DHS presented evidence (1) that Barker lowered Woods's caseload in 1993, (2) that her caseload remained lower than the average caseload of the remaining eight workers in Unit 25, and (3) that Barker and other supervisory personnel provided assistance and training to Woods to improve her performance. Woods failed to discredit this evidence. Although Woods claims that DHS never assigned any of her cases to other workers under the lend-lease program, she does not dispute DHS's contention that she did not meet the criteria for having her cases removed and assigned to other workers through the lend-lease program.[2] DHS submitted evidence that the absence of documented problems and unacceptable evaluations prior to Barker becoming supervisor in 1992 resulted from leniency and upward adjustments by a prior supervisor and from a 1992 policy change by DHS in the manner in

---

[2] The DHS lend-lease program provides a mechanism for transferring cases from certain categories of workers to other, tenured workers within the unit. Woods argues that Barker required her to work lend-lease cases for other employees, yet never assigned any of her cases to other workers during the time of her personal problems or during her period of corrective action or probation. DHS submitted evidence that cases were assigned on a lend-lease basis only for new workers in training, for workers on extended sick leave, or for vacant worker positions. Woods never requested or took extended leave during any of the applicable time periods. Nor did she meet the other criteria for having her cases assigned. After July 5, 1994, no lend-lease cases were assigned to Woods.

10

which files were reviewed for error.  Woods did not rebut this evidence.

Woods has offered no evidence that DHS's discharge based on repeated, significant errors in her work was merely a pretext for intentional discrimination.  She has not sustained her burden of establishing a genuine issue of material fact as to whether age or race animus constituted a motivating factor in DHS's decision to fire her.  Accordingly, the district court did not err in granting DHS's Motion for Summary Judgment.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.