IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-60783
Summary Calendar
_____

WILLIAM MCKINLEY YOUNT,

Plaintiff-Appellant,

v.

JAMES LYONS, ETC; ET AL,

Defendants,

JACKSON STATE UNIVERSITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
(3:97-CV-408)
_____

September 27, 1999

Before KING, Chief Judge, HIGGINBOTHAM and STEWART, Circuit
Judges.

PER CURIAM:[*]

    Plaintiff-appellant William McKinley Yount appeals the

district court's grant of summary judgment on his Title VII race

discrimination claim in favor of defendant-appellee Jackson State

University.  We affirm.

_____

    [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At the time of the events giving rise to this lawsuit, plaintiff-appellant William McKinley Yount was an instructor in defendant-appellee Jackson State University's (JSU or the University) Department of History. Yount's employment at the University began in March 1991, when the University hired him as a part-time lecturer effective March 1, 1991 through May 10, 1991 and as an instructor effective June 17, 1991 through August 5, 1991. In June 1991, the University hired Yount as an instructor for the 1991-92 academic year, at the end of which Yount received a letter from Herman B. Smith, Jr., Interim President of the University, informing him that his employment with the University had terminated. The University rehired Yount as an instructor, however, for the 1992-93 academic year. In May 1993, Yount received a letter from defendant James Lyons, President of the University, stating that his one-year employment contract would terminate on May 17, 1993 and that he could discuss future employment with Dr. Walter Hurns, Chair of the Department of History. Dr. Hurns recommended to the University's Board of Trustees (the Board) that Yount be rehired for the 1993-94 academic year, and the Board approved the recommendation. In 1994, 1995, and 1996, Yount received letters similar to Lyons's May 1993 letter, and in 1994 and 1995, Yount was rehired for the coming academic year upon Dr. Hurns's recommendation. In 1996, however, Dr. Hurns decided not to recommend Yount for employment for the 1996-97 academic year and assigned Barron Banks, a part-

2

time instructor, to take over some of Yount's classes.  After assuming these new duties, Banks became a full-time instructor.

On June 10, 1997, Yount filed two actions in the United States District Court for the Southern District of Mississippi. One suit named Lyons and the University as defendants, and the other named the attorney general of the state of Mississippi as a defendant.  Both actions asserted claims for race, national origin, religion, and sex discrimination under 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), based on the fact that Yount, a white male, had been replaced as an instructor for the 1996-97 academic year by Banks, an African-American male.  Later, a magistrate judge consolidated the two actions, and the district court entered an agreed order dismissing Lyons and the attorney general of Mississippi as defendants and all claims of discrimination based on national origin, religion, and sex.  Thus, Yount's only remaining claim was that the University discriminated against him based on his race.  On August 31, 1998, the University filed a motion for summary judgment, which the district court granted. Yount appealed.

## II.  STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, applying the same standards as the district court.  See United States v. Johnson, 160 F.3d 1061, 1063 (5th Cir. 1998). After consulting applicable law in order to ascertain the material factual issues, we consider the evidence bearing on those issues, viewing the facts and the inferences to be drawn

3

therefrom in the light most favorable to the non-movant.  See Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 214-15 (5th Cir. 1998).  Summary judgment is properly granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).

### III.  DISCUSSION

Yount alleges that the University discriminated against him on the basis of his race by failing to rehire him as an instructor for the 1996-97 academic year and by assigning Banks to take over some of his teaching duties, later promoting Banks from part- to full-time instructor.  Under the framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a Title VII plaintiff must first establish a prima facie case by a preponderance of the evidence.  See id. at 801-02.  A plaintiff may prove a prima facie case of discrimination by showing (1) that he is a member of a protected class, (2) that he sought and was qualified for an available employment position, (3) that he was rejected for that position, and (4) that the employer continued to seek applicants with the plaintiff's qualifications.  See id. at 801.  Once established, the prima facie case raises an inference of unlawful discrimination.  See Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 254 (1981).  The burden then shifts to the defendant

4

employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action. See McDonnell Douglas, 411 U.S. at 802. If the defendant comes forward with a reason which, if believed, would support a finding that the challenged action was nondiscriminatory, the inference of discrimination raised by the plaintiff's prima facie case drops from the case. See Burdine, 450 U.S. at 255 n.10 (1981). The focus then shifts to the ultimate question of whether the defendant intentionally discriminated against the plaintiff. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993).

We now apply these principles to the case before us. The parties agree that Yount established a prima facie case of race discrimination. See McDonnell Douglas, 411 U.S. at 801-02. To meet its burden of offering a legitimate, nondiscriminatory reason for its employment decision, the University explained that Yount was not rehired because students were dissatisfied with his performance as a teacher. Specifically, Dr. Velvelyn Foster, Professor of History and Director of Faculty Development, and Dr. Dollye M.E. Robinson, Dean of the School of Liberal Arts, stated in affidavits that a number of students complained that Yount did not permit them to ask questions or participate in discussions and that he refused to answer their questions, adequately explain his grading procedures, and assist students seeking help. Dr. Foster and Dr. Robinson averred that they reported the student complaints to Dr. Hurns. Dr. Hurns stated in his affidavit that he "made the decision not to recommend Mr. Yount for employment

5

for the 1996/97 academic year because of the complaints made against him by his students during the summer of 1996; and Mr. Yount's inability to manage his class and work effectively with his students to create a conducive learning environment." Dr. Hurns asserted unequivocally that his decision not to recommend Yount for re-employment was not based on race. Dr. Hurns also stated that

> [t]he practice in the Department of History at JSU is to use part-time teachers to teach courses left vacant by a full-time faculty [member] when there are not enough full-time faculty to teach those courses. Consistent with this practice, Mr. Banks was assigned one of the courses previously taught by Mr. Yount. Because Mr. Banks was already teaching three courses, this additional course gave him a full-time course load. Thus, Mr. Banks moved from part-time instructor to full-time instructor.

These explanations, if believed, would support a finding that the University's failure to rehire Yount and its reassignment of his duties to Banks was legitimate and nondiscriminatory; the University thus has satisfied its burden of production. The University need not persuade us that it was actually motivated by these reasons; it is sufficient that it has raised a genuine issue of fact regarding whether it unlawfully discriminated against Yount. See Williams v. Time Warner Operation, Inc., 98 F.3d 179, 181 (5th Cir. 1996) (citing Burdine, 450 U.S. at 254).

We now turn to the question of whether the University intentionally discriminated against Yount on the basis of race. Yount may satisfy his summary judgment burden by coming forward either with direct evidence of discriminatory intent or with circumstantial evidence that the University's rationale was

6

pretextual.  See LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 449 (5th Cir. 1996).  We have articulated the test as follows:

> [A] jury issue will be presented and a plaintiff can avoid summary judgment . . . if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [race] was a determinative factor in the actions of which plaintiff complains.  The employer, of course, will be entitled to summary judgment if the evidence taken as a whole would not allow a jury to infer that the actual reason for the discharge was discriminatory.

Williams, 98 F.3d at 181 (first alteration in original) (emphasis added) (quoting Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 995 (5th Cir. 1996) (en banc), an age discrimination case, and applying Rhodes in the race discrimination context).

Yount points to a number of incidents that he claims raise a genuine issue of material fact as to whether the University's proffered explanation for its failure to rehire him was, in fact, a pretext for race discrimination.  First, he asserts that the summary judgment evidence shows that he received high faculty performance evaluations from Dr. Hurns throughout his employment at the University.  Second, he claims that the University hired Wanda Jackson, an African-American female, for the position of assistant professor at a salary significantly higher than his own, despite her "comparatively meager credentials."  Third, he states that Dr. Hurns once advised him that "the University would no longer be using a textbook because it was 'inappropriate for the ethnic racial orientation of the institution.'"  Fourth, he maintains that Banks "organized and presided over a meeting in

7

which a major theme was that 'white people are always and historically repressive to blacks.'"

Yount has failed to raise a fact issue as to whether race was a determinative factor in the University's failure to rehire him. See Williams, 98 F.3d at 181. While Yount's high performance evaluations may cast some doubt on the University's assertion that it did not rehire him because he was a poor teacher, they do not mandate an inference that this decision was based on race. Nor does the fact that the University paid an African-American assistant professor a higher salary than Yount, a white instructor, indicate that the University refused to hire Yount because he is white. Rather, the evidence regarding Jackson's salary shows only that the University paid assistant professors more than it did instructors. Finally, Dr. Hurns's textbook comment and Banks's alleged participation in a meeting "in which a major theme was that 'white people are always and historically repressive to blacks'" do not create an inference that the University's employment decision was based on Yount's race. Dr. Hurns's rather cryptic remark does not imply any racial bias in employment. Nor is there any evidence that Banks's activities had any bearing on the University's decision not to rehire Yount. Yount's summary judgment evidence establishes nothing more than that he subjectively believed that he was the victim of racial discrimination in employment. "It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of

discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate non-discriminatory reason."  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996).

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.