Lorraine JINKS, Plaintiff,

v.

ADVANCED PROTECTION SYSTEMS, INC., d/b/a Centex Hometeam Security, Defendant.

No. Civ.A. 3:99–CV–2862–D.

United States District Court, N.D. Texas, Dallas Division.

April 4, 2001.

---

James A. Jones of Jones & Associates, Dallas, TX, for plaintiff.

Steven R. McCown and Paulo B. McKeeby of Littler Mendelson, Dallas, TX, for defendant.

*MEMORANDUM OPINION AND ORDER*

FITZWATER, District Judge.

Plaintiff Lorraine Jinks ("Jinks") sues defendant Advanced Protection Systems, Inc., d/b/a Centex HomeTeam Security ("Centex") contending that Centex violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Texas Commission on Human Rights Act ("TCHRA"), Tex. Labor Code Ann. §§ 21.001–21.405 (Vernon 1996 & Supp. 2001), and 42 U.S.C. § 1981 by denying her two promotions based on her African–American race.[1] Centex moves for summary judgment.[2] For the reasons that follow, the court grants the motion as to one promotion in question and denies it as to the other.

I

In 1998, when Jinks was employed by Centex as an Administrative Assistant, she applied for, but did not obtain, a promotion to the position of Administrative Assistant to the Vice President, Dirk Korte ("Korte"). Korte instead selected Gillian Holt ("Holt"), who is Caucasian. Shortly thereafter, Centex promoted Jinks to the position of Customer Service Coordinator.[3] While holding this job, Jinks expressed an interest in a promotion to Customer Service Manager. Mitchell Carter ("Carter") selected Diane Ritch ("Ritch"), who is Caucasian, for the job. Jinks asserts that in each instance she was the victim of race discrimination. Centex argues for several reasons that she was not.

II

■ The familiar burden shifting framework applicable to Title VII claims for

1. Because Jinks, *see* P. Br. at 1, and Centex, *see* D. Br. at 1, both assume that Jinks asserts a Title VII claim, the court will do so as well. A careful review of Jinks' complaint, however, reveals that although she refers to Title VII, she does not explicitly assert a Title VII cause of action. Instead, she alleges claims based on the TCHRA (first cause of action) and § 1981 (second cause of action).

2. Centex filed on January 22, 2001 a motion to strike parts of Jinks' summary judgment evidence. Because the court either has not relied on evidence to which Centex has objected, or the evidence, even if considered, does not affect the court's decision, the motion is denied as moot.

3. Her title was later changed to Customer Service Supervisor.

race discrimination also applies to Jinks' § 1981 and TCHRA claims.[4] *See LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 n. 2 (5th Cir.1996) ("Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII."); *see also Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 n. 2 (5th Cir.1999) (noting that law governing TCHRA and Title VII is identical). Under this paradigm, as defined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), Jinks first must establish a prima facie case of discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Once she meets this burden, Centex is obligated to produce a legitimate, nondiscriminatory reason for the employment decision at issue. *See id.* This is a burden of production, not persuasion, and involves no credibility assessment. *See id.* Once Centex meets this production burden, the presumption of discrimination disappears. *Id.* Jinks must prove by a preponderance of the evidence that the legitimate reasons offered are not the true reasons but are a pretext for discrimination. *Id.* "[T]he plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* at 143, 120 S.Ct. 2097 (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer un-

lawfully discriminated." *Id.* at 148, 120 S.Ct. 2097. "[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id.* at 147, 120 S.Ct. 2097 (emphasis in original). "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Id.* At the summary judgment stage, Jinks need only raise a genuine issue of material fact. *See Tutton v. Garland Indep. Sch. Dist.,* 733 F.Supp. 1113, 1116 (N.D.Tex.1990) (Fitzwater, J.).

■ To establish a prima facie case, Jinks is obligated to show that (1) she is a member of a protected class, (2) she sought and was qualified for an available employment position, (3) she was rejected for that position, and (4) Centex either filled the position with someone outside the protected class or continued to seek applicants with Jinks' qualifications. *See Grimes v. Texas Dep't of Mental Health & Mental Retardation,* 102 F.3d 137, 140 (5th Cir.1996).

### III

The court considers first Jinks' claim that her race was a motivating factor in Centex's decision to hire Holt rather than Jinks for the position of Administrative Assistant to the Vice President.

### A

■ Jinks has met her prima facie burden by introducing evidence that she is African–American, she applied and was qualified for the position, Centex rejected

---

**4.** The court's analysis of Jinks' Title VII cause of action also applies to her § 1981 and TCHRA claims. "Because these three statutory bases are functionally identical for the pur-

poses of [plaintiff's] claims, it would be redundant to refer to all of them." *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 (5th Cir.1999).

her, and Centex filled the position with a Caucasian.

## B

■ Centex has satisfied its obligation to produce evidence of a legitimate, nondiscriminatory reason for the employment decision by introducing evidence that Korte selected Holt based on her superior qualifications. Holt had experience performing administrative work (including dealing with customers and providing cost estimates) for a previous employer, she interviewed well, she possessed the necessary computer skills and customer relations experience, and she had experience in all the computer languages required for the job. Korte believed that Holt had greater experience as an Administrative Assistant, and he was also aware that Jinks had problems getting along with coworkers and had been involved in at least one confrontation with a coworker. Korte explicitly denied that Jinks' race played any part in his decision to select Holt.

## C

Jinks now has the burden of introducing evidence that would permit a reasonable trier of fact to find that Centex's reasons are pretextual.

■ Jinks has adduced very little relevant evidence concerning her claim that Centex discriminated by not promoting her to the Administrative Assistant position. She maintains that Centex's reliance on her supposed problem getting along with coworkers is not credible because, in May 1998, when the decision was made, there was almost no documentation in her personnel file that she had such problems, and that in the one documented incident—involving Dave King ("King")—she was the victim, not the instigator. This evidence is insufficient, alone or in combination with the other proof on which she

relies, to raise a genuine fact issue. Jinks attempts to demonstrate pretext by adducing evidence that no such problems were documented. A reasonable trier of fact could not rely on such proof to find pretext absent evidence that Centex normally documented such matters in an employee's personnel file. Jinks does not even assert that it did so. Moreover, Jinks has introduced evidence that Centex did not have an employee who handled traditional human resources functions until July 1998, and that the person who held the title of Human Resources Manager before that time performed limited duties related to payroll and benefits for a single division. *See* P.App. 8, 82–83. This evidence would tend to undercut the conclusion that personnel problems were routinely documented. Nor has she adduced evidence that Korte would have been expected to consult Jinks' personnel file or otherwise to determine its contents before making the promotional decision.

Jinks also maintains that the fact that Centex denied her a promotion in May 1998 based on the stated belief that she had difficulty getting along with coworkers, but then promoted her in July 1998 to the position of Customer Service Coordinator, creates a genuine issue of fact. This reasoning is insufficient for at least two reasons. First, she has not introduced evidence that the person who made the decision to promote her in July 1998 viewed her conflicts with coworkers as having the same significance as did Korte, or that such a problem, if it existed, had any significant or determinative impact on the qualifications for the job of Customer Service Coordinator. Second, the fact that Centex promoted her within months of denying her a promotion is probative of a *lack* of racial bias, because racial prejudice could be expected to permeate all pro-

motional decisions made within a very short time frame.

Jinks relies next on the contention that Centex violated its policy of preferring to promote from within the company. A reasonable trier of fact could not find from the summary judgment record, however, that Centex had such a policy. Jinks cites a statement that Centex made to the Texas Commission on Human Rights in which it acknowledged that it generally advertises internally that a position is available before posting it in the newspaper. The evidence that she cites would not permit a finding that there was a deviation from this policy in this instance. The cited document also shows that within Centex there is "a relatively small pool of internal candidates" and that "the process normally consists of interviewing interested candidates." P.App. 115. Thus even assuming there was an insider preference regime, a reasonable trier of fact could only find that its chief function was to encourage the company to seek internal candidates before opening a position generally. Jinks has not introduced proof that would permit a reasonable finding of such a deviation in the present case.

Jinks also contends that she had superior qualifications to those of Holt, relying on evidence that she had to train Holt in certain aspects of MS Word and Excel.

But Korte did not aver that he compared Holt's and Jinks' respective computer skills and then based his decision in whole or in part on such an assessment. He gave a more general explanation that included a variety of reasons for selecting Holt, one basis being that she possessed the necessary computer skills and had experience in all the necessary computer languages.[5]

### D

▬ Jinks avers that certain incidents occurred at Centex that point to a racist and discriminatory atmosphere and permit a finding of pretext. Some of these involve the statements of coworkers that are inadmissable hearsay. Generally speaking, for statements of managers and other employees to be admissible, there must be some demonstrable relationship between the comment and the decisionmaker. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir.2000) ("The value of such remarks is dependent upon the content of the remarks and the speaker."). In *Russell* a plaintiff supplemented her prima facie case with evidence that her supervisor had rudely referred to her age. The panel held that remarks that are probative and admissible to prove discriminatory intent should indicate "animus" and be made by someone either "primarily responsible" for an adverse employment action or who

---

5. This reasoning is not inconsistent with the court's conclusion below denying summary judgment as to Jinks' Customer Service Manager promotion claim based *inter alia* on the fact that Jinks had to train Ritch regarding customer call, complaint resolution, and scheduling procedures. That it was necessary for Jinks to train Ritch in the fundamental aspects of a manager position could reasonably support a finding of pretext when coupled with other evidence that Ritch had little or no customer service experience compared to Jinks' relevant knowledge and skills. In the context of the Administrative Assistant position, however, the fact that Jinks trained Holt on certain aspects of computer use is inadequate to support a reasonable inference of discrimination in view of the broad range of factors that Korte considered in making the hiring decision and the evidence that Holt had a history of performing administrative work. Additionally, in the Administrative Assistant context, Jinks presents the training evidence to support her assertion that she had superior qualifications to those of Holt, not to contend, as she does with respect to the Customer Service Manager promotion, that the person selected had little or no comparable experience.

"had influence or leverage over the official decisionmaker." *Id.* at 226. The court specifically noted that statements by "ordinary employees" are not generally admissible to prove a discriminatory action by an employer. *Id.* In the instant case, Jinks has not introduced proof that Korte could have been influenced by racist remarks or that he made any such comments. Jinks relies on racist remarks by other individuals in management, as well as inadmissible hearsay testimony about a racist atmosphere at Centex. None of this is competent to prove pretext. Jinks' prima facie evidence, coupled with the proof on which she relies to establish pretext, are insufficient to raise a genuine issue of material fact. The court grants summary judgment dismissing her claims based on denial of the promotion to the position of Administrative Assistant.

## IV

The court now considers Jinks' claim that Centex denied her a promotion to the position of Customer Service Manager because of her race.

### A

■ Centex contends that Jinks has failed adequately to make out a prima facie case of discrimination. It posits that she did not even apply for the position. The court disagrees. Centex correctly points out that, generally, a plaintiff who alleges discrimination with respect to promotions must actually apply for the position. *See, e.g., Shackelford,* 190 F.3d at 406. Even so, when a promotion is made without notifying an aggrieved individual, a plaintiff can still make out a prima facie case of discrimination. This is especially the case when a relatively informal system of promotion exists. *See Bernard v. Gulf Oil Corp.,* 841 F.2d 547, 570 (5th Cir.1988). Jinks avers that she notified several individuals in management, including the person who held the job of Customer Service Manager, that she desired to be promoted. A reasonable trier of fact could find that this information—in particular the communication to the prior Customer Service Manager—was relayed to Carter. Jinks has otherwise satisfied her obligation to demonstrate a prima facie case by introducing evidence that she is African–American, she applied and was qualified for the position, Centex rejected her, and Centex filled the position with a Caucasian.

### B

■ Centex has met its burden of producing legitimate, nondiscriminatory reasons for promoting Ritch rather than Jinks. Carter testifies that he worked with Ritch and was generally impressed with her work ethic and her ability to interact positively with customers and coworkers. He avers that he did not formally consider Jinks because he was aware that she had difficulties getting along with coworkers. Carter also states that he had the opportunity to witness Jinks' performance during a "dry run" of a customer service call and was not impressed with her ability to identify certain codes that Centex uses. Carter avers that a few months after Ritch received the promotion, she returned to the Accounting Department, at which time he hired Sonya Walker, who is African–American, to replace her. Centex has met its burden of production.

### C

The question now becomes whether Jinks has introduced sufficient evidence to raise a genuine issue of material fact as to the issue of pretext.

Jinks maintains that Carter discounted and ignored evidence of positive feedback that she had received from coworkers, cus-

tomers, and supervisors; that the only pre-October 1998 documentation in her personnel file that could possibly be construed as evidence of such difficulty is her own letter concerning an incident with King, in which Jinks, not King, was the victim; and that the only other evidence pertains to an October 15 incident with John Hubner, in which Jinks made allegations of discrimination.

Even assuming that the evidence that Jinks cites concerning positive feedback from coworkers, customers, and supervisors is in all respects admissible, it is inadequate to raise a fact issue concerning Carter's reasoning. In the part of the record that Jinks cites in her brief, *see* P. Br. at 24, she states:

> Prior to October 1998, my work performance was consistently praised by my supervisors (including Brady Burgett, Kaylyn Barger and Pat Drohan). I received letters of commendation from both customers and from installation technicians with whom I worked.

Jinks has cited no place in the record[6] that indicates that Carter knew about the praise and commendatory letters that Jinks had received.

Jinks' argument based on an absence of adverse comments in her personnel file fails for the reasons explained above concerning Korte's decision not to promote Jinks to Administrative Assistant. Jinks cites no place in the record that would permit a reasonable finding that Carter based his awareness that Jinks was having difficulties getting along with coworkers on the contents of her personnel file.[7]

Jinks also contends that she has raised a genuine issue of pretext by controverting Carter's reliance on her performance during a "dry run" customer service call and the unfavorable impression that it left with him. It is critical, however, to examine precisely what she says about this event and to place it in the chronology of the Customer Service Manager selection process. Carter states that, in part, he did not consider Jinks for the job because her performance during the "dry run" was unacceptable. *See* D.App. 40. Jinks does not deny that her performance was substandard; instead, she explains why she performed (or was mistakenly perceived to perform) below expectations. *See* P.App. 5–6. If Jinks in fact performed in a manner that actually caused Carter to question her competence for the job of Customer Service Manager, then she has not raised a genuine issue of pretext on that basis. She did poorly, regardless of the reason. And if Carter erred in his assessment of her, that may be employer miscreance, but it is not race discrimination. Jinks would then be left to assert that Carter engaged in conduct during the "dry run" that was intended to cause her to perform poorly, *see id.*, so that he would have a pretextual reason not to consider her for the position. But this contention would also fail since the "dry run" took place in November 1998, *see id.* at 5, Pat Drohan ("Drohan"), the incumbent Customer Service Manager,

---

**6.** The court is not required to comb the summary judgment record for evidence that she does not cite. *See* N.D. Tex. Civ. R. 56.5(c): "A party whose motion or response is accompanied by an appendix must include in its brief citations to each page of the appendix that supports each assertion that the party makes concerning the summary judgment evidence."

**7.** For the same reason, her contention that Centex created adverse documents in response to her complaints of discrimination, *see* P. Br. at 25, has no significance. There is no indication in the record that Carter purported to rely on documents—real or contrived—in Jinks' personnel file in opting not to consider Jinks for the position of Customer Service Manager.

did not announce until December 1998 that he was leaving the company, *id.* at 6, and there is no evidence in the record that Carter had advance knowledge in November that Drohan was leaving in December. It is virtually impossible that Carter would have concocted the "dry run" as a pretext to disqualify Jinks from consideration for a position that he did not know was coming open.

Jinks advances another argument, however, that, coupled with her prima facie case, raises a genuine issue of pretext and warrants denying Centex's motion as to the Customer Service Manager promotion. *See* P. Br. at 25–26. Jinks points to evidence that Ritch, the only person whom Carter considered, was at the time a 22–year old attending college, with no experience in customer service. He did not even consider Jinks, who was the current Customer Service Supervisor, had over ten years customer service experience, and ultimately had to train Ritch regarding customer call, complaint resolution, and scheduling procedures. Ritch held the position of Customer Service Manager until March 15, 1999—a period of only three months—after which she returned to the position of Staff Accountant. This evidence that Ritch not only lacked comparable experience, but any experience, in the relevant job responsibilities and duties, that Jinks had to train her in some aspects of the job, and that her tenure in the position was quite brief, coupled with the evidence that establishes Jinks' prima facie case, would permit a reasonable trier of fact to doubt the reasons on which Carter relies and to find that they are pretextual.

"[A]lthough the presumption of discrimination 'drops out of the picture' once the defendant meets the burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima face case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual[.]" *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097 (citations, internal quotation marks, and ellipses omitted). In the course of proving discriminatory intent, a plaintiff's evidence that a defendant's stated reason for its adverse employment action was false may be sufficient to support an ultimate finding of discrimination in the absence of direct evidence. *Id.* "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis in original). "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" *Reeves,* 530 U.S. at 147, 120 S.Ct. 2097 (quoting *Wright v. West,* 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992)). The court therefore denies summary judgment as to this claim.

\* \* \* \* \* \*

The court grants in part and denies in part Centex's motion for summary judgment.

**SO ORDERED.**